ELLEN M. MAHAN
Deputy Section Chief
JAMES R. MacAYEAL
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 616-8777
E-mail: jamie.macayeal@usdoj.gov

DENNIS K. BURKE
United States Attorney
JANET K. MARTIN
Assistant United States Attorney
Arizona State Bar No. 6014
District of Arizona
405 W. Congress Street, Suite 4800
Tucson, AZ  85701-5040

Attorneys for Plaintiff United States

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES, <br><br> Plaintiff, <br><br> v. <br><br> CALPORTLAND COMPANY, a California Corporation, <br><br> Defendant. | Case No. <br><br><br> COMPLAINT |

The United States, by authority of the Attorney General of the United States and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges as follows:

## NATURE OF ACTION

1. This is a civil action pursuant to Section 113(b) of the Clean Air Act (the "Act"), 42 U.S.C. § 7413(b) against CalPortland Company ("CPC") for civil penalties and injunctive relief based on violations of the Act, 42 U.S.C. § 7401 et seq., and the Air Implementation Plan for the State of Arizona approved by EPA pursuant to the CAA in connection with modifications to CPC's cement manufacturing plant in Rillito, Arizona (the "Facility").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action under Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

3. Venue is proper in this judicial district under Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and 1395, because it is the judicial district in which the Defendant resides and in which the violations alleged in this complaint occurred.

## AUTHORITY AND NOTICE

4. Authority to bring this action is vested in the United States Department of Justice pursuant to Section 305 of the Act, 42 U.S.C. § 7605, and 28 U.S.C. §§ 516 and 519.

## THE DEFENDANT

6. CPC is a California Corporation with its principal place of business in Glendora, California. CPC was formerly known as California Portland Cement Company and did business in Arizona as Arizona Portland Cement Company.

## STATUTORY AND REGULATORY FRAMEWORK

7. The primary purpose of the Act is to protect and enhance the quality of the nation's air resources so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

8. The Act requires EPA to adopt primary and secondary national ambient air quality standards ("NAAQS") for selected pollutants. 42 U.S.C. § 7409. Primary NAAQS are the maximum concentrations considered non-threatening to public health, and secondary NAAQS are set at the concentrations required to protect public welfare. Id. Notice of the commencement of this action has been given to the Arizona Department of Environmental Quality ("ADEQ"), as required by Section 113(b) of the Act, 42 U.S.C. § 7413(b). EPA served a Notice of Violation ("NOV") entitled "Finding and Notice of Violation" on CPC on June 11, 2003.

9. Congress has given the states the responsibility of attaining and maintaining the NAAQS through a State Implementation Plan ("SIP"), consisting of rules and regulations, which is submitted to the EPA for approval. 42 U.S.C. § 7410.

10. EPA's criteria for approving a SIP are contained in 40 C.F.R. Part 51. These regulations implement the general standards for SIP approval established by Congress in 42 U.S.C. § 7410(a)(2)(A)-(K). Once EPA decides that a SIP meets these criteria, it codifies its decision in 40 C.F.R. Part 52. Once EPA approves a SIP, the SIP becomes enforceable as federal law. 42 U.S.C. § 7413.

11. Under Section 107(d) of the Clean Air Act, 42 U.S.C. § 7407(d), each state is required to designate areas within its boundaries in which air quality is better than the national ambient air quality standard for each listed pollutant,

those areas in which it is worse, and those areas in which it cannot be classified due to insufficient data. The Administrator is thereafter required to promulgate a list of such areas. An area which meets the national ambient air quality standards for a particular pollutant is termed an "attainment" area. An area that does not meet the national ambient air quality standards is termed a "nonattainment" area.

12. Under Section 110(a)(2)(D) of the Clean Air Act, 42 U.S.C. § 7410(a)(2)(D), each SIP must include, inter alia, a program to provide for the regulation of the modification, construction, and operation of any stationary source of air pollution, including a permit program as required under Part C of the Clean Air Act, 42 U.S.C. §§ 7470-7479, relating to prevention of significant deterioration ("PSD") in attainment areas. A PSD permit must impose an emissions rate reflecting the Best Available Control Technology ("BACT") among other requirements. A SIP must also have a permitting program under Part D of the Act, 42 U.S.C. §§ 7501-7514a, to achieve attainment in nonattainment areas, including a requirement imposing the lowest achievable emissions rate ("LAER") and the use of emissions offsets through the permitting process.

13. Pursuant to Section 110 of the Act, 42 U.S.C. § 7410, the EPA approved "The State of Arizona Air Pollution Control Implementation Plan" (the "Arizona SIP"), which was officially submitted to EPA on January 28, 1972. 40 C.F.R. § 52.120(a)-(b). Since that time, the Administrator has approved numerous revisions of the Arizona SIP, as specified at 40 C.F.R. § 52.120(c).

14. Title 9, Chapter 3, Articles 1 (Definitions) and 3 (Permits) of the Arizona Administrative Code ("AAC") are part of the EPA approved SIP. See 49 Fed. Reg. 41,026 (October 19, 1984). Section R9-3-301(A) of the EPA

approved SIP prohibits any person from modifying a stationary source of air contaminants without having first obtained a permit from ADEQ. APC obtained a minor modification permit prior to commencing construction of RIMOD III.

15. The Arizona SIP imposes requirements for nonattainment New Source Review ("NSR") and PSD permitting. These requirements are codified in the SIP-approved AAC at R9-3-301 through 306.

16. Title V of the Clean Air Act, entitled "Permits", 42 U.S.C. § 7661-7661e, establishes an operating permitting program designed to include all applicable requirements of the Clean Air Act and a SIP into a single permit, and to provide for permitting for sources of hazardous air pollutants. Section 502 of the Act required States to submit an approvable Title V permitting program before November 15, 1993, and allows EPA to approve on an interim basis programs that substantially meet the requirements of Title V. 42 U.S.C § 7661(g). Pursuant to Section 502, the Administrator has promulgated regulations at 40 C.F.R. Part 70 setting forth the minimum requirements for an approvable Title V program. 57 F.R. § 32295 (July 21, 1992).

17. EPA has approved Arizona's Title V program. Section R18-2-302 of the Arizona Administrative Code prohibits commencing construction of and operation of any source subject to regulation without obtaining a permit from ADEQ. Ariz. Adm. Code, § R18-2-302.

18. Section 113(b) of the Act, 42 U.S.C. § 7413(b), provides that the Administrator is authorized to commence a civil action for appropriate relief, including injunctive relief and civil penalties, against any person who has violated or is in violation of any requirement or prohibition of an applicable state implementation plan. With regard to the violation of any requirement or prohibition of an applicable state implementation plan, the Administrator may

commence such civil action at any time after the expiration of thirty days following the Administrator's issuance of a Notice of Violation. Section 113(b)(2) of the Act, 42 U.S.C. § 7413(b)(2), also authorizes the Administrator, acting through the Attorney General, to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation, against any person whenever such person has violated, or is in violation of, requirements of the Act other than those specified in Section 113(b)(1), 42 U.S.C. § 7413(b)(1).

19. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701 and 40 C.F.R. § 19.4, the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each violation occurring between January 30, 1997, and March 15, 2004, up to $32,500 per day for each violation between March 16, 2004, and January 12, 2009, and up to $37,500 per day for each violation occurring after January 12, 2009.

## GENERAL ALLEGATIONS

20. The Facility is a stationary source of air pollutants regulated under the Act and the Arizona SIP. The area where the Facility is located is nonattainment for particulate matter ("PM10").

21. In a 1998 permit application, CPC sought to revise its Air Quality Control Permit to allow for a two-phased project, referred to as "RIMOD III".

22. The proposed Phase I changes for RIMOD III included installation of new raw material handling equipment, construction of a new roller mill system, mechanical and process control changes to Kilns 1-3, modification of the Kiln 4 configuration, and addition of new clinker handling equipment.

23. The proposed Phase II changes were never constructed.

24. The 1998 permit application erroneously claimed the modifications were not subject to NSR permitting requirements for major modifications because the modifications would not result in significant net emissions increases.

25. In 1999, CPC began construction of RIMOD III without proper ADEQ permits.

26. CPC should have sought and obtained a nonattainment NSR permit for significant increases in PM10 emissions. Through this permitting process, CPC should have also evaluated and applied controls for these pollutants and obtained emission reductions to offset the increases in PM10 emissions at the Rillito facility.

## FIRST CLAIM FOR RELIEF
(Non-attainment New Source Review Violations)

27. Paragraphs 1 through 26 are realleged and incorporated herein by reference.

28. The Facility has been a major emitting facility and major stationary source subject to the nonattainment NSR requirements of the Act and the Arizona SIP.

29. The Defendant's Facility is located in an area designated nonattainment for PM10.

30. As part of RIMOD III, the Facility has undergone major modifications within the meaning of the nonattainment NSR provisions. Such major modifications have resulted in a significant net emissions increase of PM10.

31. CPC has violated the nonattainment NSR permitting programs that EPA has approved as part of the applicable SIP pursuant to sections

110(a)(2)(C) and (I) of the Act, 42 U.S.C. § 7410(a)(2)(C) and (I), and 40 C.F.R. §§ 52.24 and 51.165 in one or more of the following ways: by failing to apply for and obtain necessary permits prior to construction; by failing to provide complete and accurate information in its permit applications regarding the impact of proposed construction on emissions levels or air quality; by failing to install and operate LAER for the control of PM10; and/or by failing to obtain and operate with federally enforceable emissions offsets at least as great as the modified source's emissions.

32. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each violation occurring between January 30, 1997, and March 15, 2004, up to $32,500 per day for each violation between March 16, 2004, and January 12, 2009, and up to $37,500 per day for each violation occurring after January 12, 2009.

SECOND CLAIM FOR RELIEF
(Title V)

33. Paragraphs 1 through 32 are realleged and incorporated herein by reference.

34. The Facility has been a "major source" within the meaning of Section 501(2) of the Act, 42 U.S.C. §7661(2), the federal implementing regulations at 40 C.F.R. § 70.2, and applicable state operating permit regulations.

35. The Facility has undergone major modifications within the meaning of the nonattainment NSR provisions. Such major modifications have resulted in significant net emission increases of PM10. As a result, these modifications

triggered the requirements to obtain nonattainment NSR permits establishing emission limitations that meet LAER and to operate in compliance with LAER.

36. CPC failed to submit a complete application for an operating permit, or to supplement or correct such application and provide additional information to address requirements applicable after the filing of the application. In particular, CPC failed to submit an operating permit application that: identified all applicable requirements (including the nonattainment NSR requirements); certified compliance by a responsible official with all applicable requirements; and contained a compliance plan for all applicable requirements for which the source was not in compliance.

37. CPC failed to obtain a proper operating permit that contained emission limitations that met LAER as required by Section 504(a) of the Act, 42 U.S.C. §7661c(a), 40 C.F.R. §§ 70.1(b), 70.6(a), and applicable state operating regulations. As a result, CPC operated without meeting such limitations and without having an operating permit that requires compliance with such limitations or that contains a compliance plan for all applicable requirements for which the plant is not in compliance.

38. CPC has violated Sections 502(a), 503, and 504(a) of the Act, 42 U.S.C. §§ 7661a(a), 7661b, and 7661c(a), the related federal operating permit program regulations at 40 C.F.R. Part 70, and the applicable state operating permit program regulations. Unless restrained by an order of this Court, these violations are likely to continue.

39. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject Defendant to injunctive relief and civil

penalties of up to $27,500 per day for each violation occurring between January 30, 1997, and March 15, 2004, up to $32,500 per day for each violation between March 16, 2004, and January 12, 2009, and up to $37,500 per day for each violation occurring after January 12, 2009.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

a. Enter judgment in favor of the United States for civil penalties against CalPortland Company up to the statutory maximum for each day of each violation;

b. Enjoin any further violations of the Act or the SIP;

c. Award costs and disbursements in this action; and

d  Grant such other and further relief as this Court deems just and proper.

Dated: August 26, 2010

Respectfully submitted,

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
United States Department of Justice

JAMES R. MacAYEAL
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 616-8777

|||
|---|---|
| 1 | |
| 2 | Facsimile: (202) 514-2583<br>jamie.macayeal@usdoj.gov |

Facsimile: (202) 514-2583
jamie.macayeal@usdoj.gov

DENNIS K. BURKE
United States Attorney
JANET K. MARTIN
Assistant United States Attorney
Arizona State Bar No. 6014
District of Arizona
405 W. Congress Street, Suite 4800
Tucson, AZ 85701-5040
(520) 620-7300

OF COUNSEL:
KARA CHRISTENSON
United States Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, CA 94105

TAHANI RIVERS
United States Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460